**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

CARALIS CROWNER,

          Plaintiff,                             CIVIL ACTION NO.: 6:17-cv-34

     v.

LT. MITCHELL,

          Defendant.

## <u>ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

Plaintiff, an inmate at Georgia State Prison in Reidsville, Georgia, filed this cause of action pursuant to 42 U.S.C. § 1983, contesting certain conditions of his confinement while incarcerated at Smith State Prison in Glennville, Georgia. (Doc. 10.) After the requisite frivolity review, Plaintiff's Amended Complaint was served on Defendant Mitchell. (Doc. 13.) Defendant then filed a Motion to Dismiss based on Plaintiff's failure to exhaust his available administrative remedies. (Doc. 17.) Plaintiff filed a "Brief in Support of His Opposition Motion to Defendant's Summary Judgment," and Defendant filed a Reply, and Plaintiff filed a Response to Defendant's Motion. (Docs. 31, 33, 35.) For the reasons set forth below, I **RECOMMEND** that the Court **GRANT** Defendant's Motion to Dismiss, **DISMISS WITHOUT PREJUDICE** Plaintiff's Amended Complaint for failure to exhaust, **DISMISS AS MOOT** all other pending Motions, and **DENY** Plaintiff leave to appeal *in forma pauperis*. I further **RECOMMEND** that the Court **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case.

## BACKGROUND

Plaintiff's pleading centers on several head and eye injuries he received after inmates attacked him at Smith State Prison on February 17, 2015.  (Doc. 10, p. 6.)  Plaintiff alleges that after the attack, Defendant Mitchell refused to take him to a hospital and instead, placed him in segregation because no medical staff was present.  (Id.)  Plaintiff further alleges that the care he received from Smith State Prison medical staff subsequent to the attack was inadequate and resulted in permanent damage to his eye socket.  (Id. at pp. 6–11.)

Plaintiff's only remaining claims after frivolity review were his deliberate indifference to medical needs claims against Defendant Mitchell in his individual capacity.  (Doc. 13.) Defendant filed a Motion to Dismiss, arguing that Plaintiff failed to exhaust his available administrative remedies because he did not appeal his grievances.  (Doc. 17, 18, 21.)  The Court directed Plaintiff to file a Response to this Motion to Dismiss, warning Plaintiff that if he did not "timely respond to Defendant's Motion, the Court will determine that Plaintiff does not oppose the Motion."  (Doc. 22, p. 3.)  Plaintiff requested, and the Court granted, an extension of time to respond to the Motion to Dismiss.  (Doc. 25, 30.)  However, instead of a Response addressing Defendant's arguments regarding Plaintiff's lack of exhaustion, Plaintiff submitted a "Brief in Support of his Opposition Motion to Defendant's Summary Judgment."  (Doc. 31.)  Defendant filed a Reply stating that this Brief was wholly unresponsive to Defendant's Motion to Dismiss and failed to discuss Plaintiff's exhaustion.  (Doc. 33.)  On February 5, 2018, two months after the time to respond had expired, Plaintiff filed a Response to the Motion to Dismiss.[1]  (Doc. 35.)

---

[1]   Plaintiff executed his Response on January 20, 2018.  (Doc. 35, p. 2.)  Regardless, Plaintiff's submission is still untimely as responses were due December 18, 2017.

**DISCUSSION**

I.     **Dismissal for Plaintiff's Failure to Exhaust Available Administrative Remedies Before Filing Suit**

A.     **Standard of Review**

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75 (internal citation omitted). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit Court of Appeals set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept

all of plaintiff's facts as true.  <u>Id.</u>  Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]"  <u>Id.</u>  "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies."  <u>Id.</u> at 1083.  The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case.  <u>See Bryant</u>, 530 F.3d at 1376–77.

### B.      Legal Requirements for Exhaustion

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit in federal court.  <u>See Porter v. Nussle</u>, 534 U.S. 516, 524 (2002).  Section 1997e(a) of Title 42 of the United States Code states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted."  In <u>Porter</u>, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory.  <u>Porter</u>, 534 U.S. at 523; <u>see also</u> <u>O'Brien v. United States</u>, 137 F. App'x 295, 301–02 (11th Cir. 2005) (finding lack of exhaustion where prisoner "prematurely filed his civil complaint . . . and . . . 'failed to heed that clear statutory command' requiring that his administrative remedies be exhausted before bringing suit").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'"  <u>Green v. Sec'y for Dep't of Corr.</u>, 212 F. App'x 869, 871 (11th Cir. 2006) (quoting <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)).  Furthermore, requiring

exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." <u>Id.</u> at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." <u>Id.</u> at 90–91. In other words, an institution's requirements define what is considered exhaustion. <u>Jones v. Bock</u>, 549 U.S. 199, 218 (2007).

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. <u>Bryant</u>, 530 F.3d at1378 ("To exhaust administrative remedies in accordance with the PLRA [(Prison Litigation Reform Act)], prisoners must 'properly take each step within the administrative process.'") (quoting <u>Johnson v. Meadows</u>, 418 F.3d 1152, 1157 (11th Cir. 2005)); <u>Sewell v. Ramsey</u>, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

Furthermore, an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA. <u>Johnson</u>, 418 F.3d at 1157–59; <u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1261 (11th Cir. 2000) (inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). Additionally, "[t]he only facts pertinent to determining whether a

prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint."  Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012).

"However, 'while [Section] 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require more.'"  Id. (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)).  The purpose of Section 1997e(a) is not that "fact-intensive litigation" result over whether every fact relevant to the cause of action was included in the grievance.  Hooks v. Rich, CV605-65, 2006 WL 565909, at *5 (S.D. Ga. Mar. 7, 2006) (internal citation omitted).  "'As long as the basic purposes of exhaustion are fulfilled, there does not appear to be any reason to require a prisoner plaintiff to present fully developed legal and factual claims at the administrative level.'"  Id. (quoting Irvin v. Zamora, 161 F. Supp. 2d 1125, 1135 (S.D. Cal. 2001)).  Rather, Section 1997e(a) is intended to force inmates to give state prison authorities a chance to correct constitutional violations in their prisons before resorting to federal suit and to prevent patently frivolous lawsuits.  Id.

## C.    The Georgia Department of Corrections' Grievance Procedure

The Georgia Department of Corrections' grievance procedure is set forth in Standard Operating Procedure ("SOP") IIB05-0001.  (Doc. 21-1.)  This SOP does not require an inmate to attempt an informal resolution of his complaint before filing a formal grievance.  (Id. at p. 5.)  An inmate can file, with a few exceptions, "a grievance about any condition, policy, procedure, or action or lack thereof that affects the [inmate] personally."  (Id. at p. 6.)  Grievance forms must be available in the control rooms of all living units and must be provided upon request by an offender.  (Id. at p. 5.)  An inmate must submit a grievance form "no later than 10 calendar days from the date the [inmate] knew, or should have known, of the facts giving rise to the grievance."  (Id. at p. 8 (emphasis in original).)  A "calendar day" is "a 24 hour time period from

6

midnight to midnight Monday through Sunday."  (Id. at p. 3.)  The inmate must use the prison's grievance form when filing the original grievance, and he must sign the grievance form and give it to any counselor.  (Id. at p. 8.)  The counselor then gives the inmate the bottom portion of the grievance form as a receipt and forwards the grievance to the Grievance Coordinator.  (Id.)

The Grievance Coordinator is to screen the grievance to determine whether the warden should accept the grievance or reject it.  (Id.)  The warden has a period of forty (40) calendar days from the date the inmate gave his grievance to the counselor to respond.  An extension of ten (10) calendar days can be granted once, provided the inmate is advised in writing of the extension before the original 40 calendar days have expired.  (Id. at p. 11.)  An inmate can file an appeal with the Commissioner's Office in the following instances: if the grievance coordinator rejects his original grievance; after the warden responds to the original grievance; or when the time allowed for the warden's decision has expired.  The inmate has seven (7) calendar days in which to file this appeal.  (Id. at p. 12.)  The Commissioner has 100 calendar days after receipt to render a decision.  (Id. at p. 13.)  These time limits may be waived for good cause.  (Id. at p. 12.)

**D.    Assessment of Plaintiff's Efforts to Exhaust**

Plaintiff filed two grievances at Smith State Prison during the month of February 2015. (Doc. 21-2, p. 3.)  The first grievance was filed on February 23, 2015, for staff negligence on the date of the attack, and the second grievance was filed on February 27, 2015, for lack of medical care.  (Id.)  Both grievances were denied, and Plaintiff did not file an appeal for either grievance. (Id.)

Plaintiff argues in his untimely Response that he fully exhausted because prison staff never notified him when the 30-day period had expired, and because Defendant cannot show that "next level of exhaustion of remedies were conducted and p[u]rsued on behalf of plaintiff."

(Doc. 35, p. 1.)  However, as indicated above, it is Plaintiff's duty to exhaust his administrative remedies.  Thus, under the first <u>Turner</u> step, even assuming the truth of all of Plaintiff's factual statements regarding exhaustion, he failed to exhaust his administrative remedies.  Even if prison staff never provided Plaintiff with a grievance response, he would still be required to file an appeal.  (<u>See</u> Doc. 21-2, p. 12 ("The [inmate] may file a Central Office Appeal only after . . . the time allowed for the Warden's decision to be given to the [inmate] has expired.").)  Plaintiff must properly pursue all administrative remedies available to him in order to exhaust.  Moreover, Plaintiff makes no allegations that the full grievance procedure was unavailable to him.

Yet even if Plaintiff surpassed the first <u>Turner</u> step, his arguments regarding exhaustion wither even more readily under the second <u>Turner</u> step.  The record clearly shows that Plaintiff acknowledged receipt of his grievance responses on April 3, 2015, (doc. 21-3, p. 2), and April 15, 2015, (doc. 21-4, p. 2).  Moreover, the record belies any claim that the grievance process was unknown or unavailable to him.  Indeed, Plaintiff's grievance history indicates that the grievance process was available to him, that he utilized it several times before, and in fact, had filed an appeal of a separate grievance just several months later.  (<u>Id.</u> at pp. 2–4.)

Accordingly, the Court should **GRANT** Defendant's Motion to Dismiss and **DISMISS** Plaintiff's case for failure to exhaust.

## II.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis.*[2]  Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  <u>See</u> Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma*

---

[2]  A Certificate of Appealability is not required to file an appeal in a Section 1983 action.  <u>See</u> Fed. R. App. P. 3 & 4; <u>Morefield v. Smith</u>, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing <u>Mathis v. Smith</u>, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

*pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]").  An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3).  Good faith in this context must be judged by an objective standard.  <u>Busch v. Cty. of Volusia</u>, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989); <u>Carroll v. Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact."  <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002); <u>see also</u> <u>Brown v. United States</u>, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Defendant's Motion to Dismiss and Plaintiff's Response, there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **GRANT** Defendants' Motion to Dismiss, (doc. 17), **DISMISS WITHOUT PREJUDICE** Plaintiff's case for failure to exhaust his available administrative remedies, **DISMISS AS MOOT** all other pending Motions, and **DIRECT** the Clerk of Court to enter the appropriate judgment of dismissal and **CLOSE** this case.  I further **RECOMMEND** that the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

9

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 21st day of February, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA